### THE BELLE OF THE COAST.

### LEONARD v. THE BELLE OF THE COAST.

(District Court, E. D. Louisiana. May 30, 1893.)

#### No. 13,018.

SEAMEN—WAGES—FORFEITURE—STEAMBOAT MEN.

> On a libel by a steamboat mate to recover wages, the defense was that libelant had forfeited his wages by leaving the boat when her cargo was on board, and she was ready to proceed on her voyage. Libelant had given notice of intention to quit, and there was uncontradicted evidence that, when masters of steamboats were dissatisfied with mates, they discharged them, and, when mates became dissatisfied, they left the service. Libelant was shown to be a most competent person, against whom no complaint was made, and the sole cause of his leaving was a difference with the owner of the boat as to the method of paying the crew. *Held*, that there was no forfeiture, and that libelant should recover.

In Admiralty. Libel by John Leonard against the steamboat Belle of the Coast to recover wages. Decree for libelant.

H. W. Robinson, for libelant.

J. D. Grace, for claimant.

BILLINGS, District Judge. The allegations of the libel are, in substance, that libelant was employed, during the fall of the year 1892, as first mate of the Belle of the Coast, at the rate of wages of $125 per month, until the 2d day of December, 1892, when, on the last-mentioned day, on account of a misunderstanding with the owner, after notice given, he left the service of said boat. The answer in substance admits the employment of libelant in the capacity and at the rate of wages aforesaid, to be paid weekly, but avers that the libelant was not entitled to quit the service of said boat at the time he did, leaving her cargo laden on board, the boat being ready to proceed on her voyage, and therefore forfeited whatever wages were due him. The evidence of libelant sustains the allegations of his libel, and W. H. Hines, M. Foley, Frank Smith, and Thomas Adams testify as to the custom of em-

ploying mates, viz. that when the masters of boats are dissatisfied they discharge mates, or when the mates are dissatisfied they quit the service of the boat. This evidence is uncontradicted. The employment of mariners on boats plying between different points in the state is by verbal agreement, the provisions of the law not being understood to require shipping articles.

The sole question is, did the libelant forfeit his earned wages by reason of leaving the boat as he did? The evidence shows that the sole cause of the misunderstanding was as to the manner of paying off the crew. On boats engaged in the sugar trade the mode followed by libelant, who had been master and mate, was to pay off the gang. By this is meant that it requires six men to handle a hogshead of sugar, and, of these men, one is designated captain of the gang, to whom is delegated the receipt of the payment of the wages of the entire gang. The owner of the boat, on the completion of the first trip, objected to this mode of payment, and, on the assurance of the libelant that he could not work satisfactorily upon any other plan, the owner acquiesced in this method, and this mode of payment was continued on the other trips, until the one commenced on the 2d of December, 1892. During this trip the question was again raised by the owner, resulting in the quitting of the service of the boat by the libelant, he having given notice of his intention to do so. Can the claimant, solely for this reason, claim the forfeiture of the earned wages, when the evidence shows the libelant to have been a most competent person, and against whom no complaint had been made as to the performance of his duties? Clearly, no.

There must be judgment for libelant for the amount claimed, $23.33, with interest, as claimed.