## THE SENTINEL.

### (District Court, E. D. New York. March 23, 1907.)

1. SEAMEN—WAGES—EFFECT OF DISCHARGE FOR CAUSE.

A seaman is entitled to recover wages for the time served, although discharged because of fault on his part.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, § 83.]

2. SAME.

Conflicting evidence considered, and held to sustain the claim of a seaman for wages, but not to show that they were withheld without sufficient cause, so as to subject the owner to the penalty provided by Rev. St. § 4529 [U. S. Comp. St. 1901, p. 3077].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, § 150.]

In Admiralty. Suit by seamen for wages.

James J. Macklin, for claimant.
F. A. Acer, for libelants.

CHATFIELD, District Judge. The libelant Peterson claims wages to the amount of $93.33 for services as engineer upon the yacht Sentinel during the month of May and up to the 2d of June, 1905, and the further sum of $475, wages at the rate of $1 a day, under the provisions of section 4529, Rev. St. [U. S. Comp. St. 1901, p. 3077], computing the time from the date when the alleged wages of $93.33 became due. The libelant Evje claims wages in the amount of $100, for the month of June, 1905.

The testimony in the case shows that the libelant Peterson was discharged upon the 2d day of June, 1905, at the request of the officers of the Engineer Corps of the United States Army, who were operating the yacht Sentinel under a charter with the owner at that time. The

claimant produces a receipt for the sum of $75 (alleged by the libelant Peterson to have been altered from a receipt for $5), which it is stated by the claimant covered the wages of the libelant Peterson for the month of May. On behalf of Peterson a check for the sum of $90 is produced, which he received at the end of the month of May, and upon which payment was stopped. The claimant offers proof to the effect that this check was made out on information furnished by one Edwards, then mate of the vessel, but that payment on this check was stopped, inasmuch as information was obtained that the $75 referred to in the receipt had already been paid.

It is impossible to determine from the testimony what the exact situation was. Edwards, the mate of the vessel, who was a witness throughout the whole transaction, and by whom the $75 was paid to Peterson, if paid at all, is in Australia. Upon the testimony it is apparent that Peterson rendered services for the time alleged. Without the testimony of the man Edwards, it seems to the court that Peterson is entitled to his wages for the month of May, and for two days in June. The check on which payment was stopped was testified to be in Edwards' handwriting, and was given upon information as to the services of Peterson furnished by Edwards. This makes it unreasonable to suppose that within a few days afterwards payment was stopped upon the check upon information also furnished by Edwards, to the effect that he had already paid $75 of the wages represented by the check, and that at an interview between Edwards, Peterson, and William Garner, agent for the owner, Peterson should sign a receipt admitting that fact, after attempting to collect the amount of the check which had been stopped. William Garner is afflicted with cataracts, and is apparently unable to see, except close at hand, and when objects are held at an angle to his line of vision. Peterson showed on the trial that script writing in English was not read by him with much facility, and it would appear that, if any deception was practiced, it was connected with the action of the missing Edwards. The story of Peterson as given on the stand is sufficient to entitle him to recover wages for the month of May at the rate of $100 per month, less $10 cash advanced, and $5 paid in the month of June, making the net amount of $85, together with $3.33, for one day's service in June.

In the case of Evje, who was hired at the rate of $100 per month, and discharged upon the 14th of June, a serious issue of fact arises over the circumstances of his discharge, and the condition in which he left the boilers of the boat. It may be that the owner of the boat suffered serious damage resulting from the acts of Evje, but no counterclaim to offset the claim for wages has been filed. On the authority of Moore v. Neafie (D. C.) 3 Fed. 650, The Pacific (D. C.) 18 Fed. 703, and The Belle of the Coast (D. C.) 56 Fed. 251, it would appear that Evje is entitled to his wages for the 14 days of June, even if discharged because of fault on his part. The testimony of Evje and his witnesses as to his discharge does not bear scrutiny; while the testimony offered on the part of the claimant seems to the court to sustain the contention that Evje left the vessel in the manner alleged by the claimant. In the absence of any proof as to the value of his

services, except as to the hiring of Evje at $100 a month, his claim will be disallowed beyond the sum of 14 days' pay, at $3.33 per day.

Under the Peterson libel, the claimant shows reasonable grounds for disputing the claim, even if not able to make out a defense sufficient to prevent any recovery on the part of the libelant; and therefore the additional penal damages provided for in section 4529 will not be allowed.

A decree may be entered allowing the libelant Peterson $88.33, and the libelant Evje $46.67, with one bill of costs.