## THE SADIE C. SUMNER.

### (District Court, D. Massachusetts. November 4, 1905.)

### No. 1,717.

1. SEAMEN—RIGHT TO REDUCE WAGES.

A reduction in the wages of a mate after the completion of the voyage, for alleged incompetency or neglect of duty, will not be approved, where the employment was on a coasting vessel and there was opportunity to discharge him, but no action was taken by the master to that end, nor to disrate him.

2. SAME—REFUSAL TO PAY—RECOVERY OF PENALTY.

Where there was fair ground for claiming the right to reduce the wages of a mate because of neglect of duty, the refusal to pay him the agreed wages in full on his discharge was not "without sufficient cause," so as to subject the master or owner to the penalty imposed by Rev. St. § 4529, as amended by Act Dec. 21, 1898, c. 28, § 4, 30 Stat. 756 [U. S. Comp. St. 1901, p. 3077].

In Admiralty. Suit for wages.

Hill, Bangs, Barlow & Homana, for libelant.

George L. Dillaway, for claimant.

DODGE, District Judge. Libel for wages. The libelant shipped as mate on the schooner for a voyage from Boston to Apalachicola and back to Boston at $45 per month, and has made the voyage agreed on. The answer filed by the master denies that he was competent to perform the duties expected of a mate, and alleges that he was negligent, inefficient, and disobedient. A tender of the amount which would be due him at $40 per month, instead of $45, is relied on in the answer as amended, and the amount tendered is claimed to be all that his services were justly and reasonably worth. The alleged tender is admitted to have been made.

The evidence has not satisfied me that the libelant was incompetent to perform the duties usually expected, in return for such wages, of a mate on board such a schooner during such a voyage. It is true that he did not possess sufficient knowledge of navigation to obtain a government license as mate, but the schooner was of less than 700 tons burden, and her mate was not, therefore, required by U. S. Rev. St. § 4438, as amended by Act Dec. 21, 1898, c. 29, 30 Stat. 764 [U. S. Comp. St. 1901, p. 3034], to be licensed. He had served as mate on board several similar vessels engaged in coastwise voyages like this during a period covering three to four years.

The evidence has satisfied me, however, that the libelant's performance of the duties belonging to his position was unsatisfactory and such as to give the master just ground of complaint. It is not disputed that he was habitually late in coming on watch, and that he continued to be late after remonstrance by the master. There was uncontradicted evidence that during one evening while the schooner lay at Apalachicola, when the m..ster was absent and the libelant left in charge, he absented himself from ner for some hours, taking the steward and engineer with him, and leaving on board only the four seamen belonging to her crew. These breaches of discipline, not to refer to other shortcomings of less consequence, would in my opinion have justified a reduction of his wages or deduction from them, if the master had taken definite action at the proper time. He threatened the libelant with a reduction of wages it is true, but never disrated him, nor made any entry in the log book regarding any of the shortcomings complained of, nor gave him any notice of any definite amount of reduction, nor inflicted any punishment upon him at any time. At Apalachicola the libelant asked the master to pay him off and discharge him if he was not satisfactory. This the master refused to do, but said he would apply to the collector there to have him disrated. There being no ship ing commissioner, the collector might have heard and decided the matter, but only in case both parties agreed to refer it to him. Rev. St. U. S. §§ 4503, 4554 [U. S. Comp. St. 1901, pp. 3063, 3091]. The libelant would not agree to submit the question to the collector, and, finding that uelay and expense would be involved in obtaining another mate if the libelant were discharged, the master told him finally that he "guessed he could stand it back to Boston, as he had put up with him so long." For another mate it would have been necessary to send as far as New Orleans; none being obtainable at Apalachicola. The libelant then continued as mate until the end of the voyage.

I think it is too late to reduce the rate of wages at which the libelant was shipped, after he has thus been allowed to complete the voyage in the capacity for which he shipped. However serious as violations of good order and discipline the instances of misconduct on his part may have been, it is not shown that they occasioned any actual delay or damage to the vessel or to the voyage. In one case a reduction of wages, upon somewhat similar grounds, was approved by the court after the voyage was over. The Buena Vista, 3 Blatchf. 510, Fed. Cas. No. 2,105. The voyage in that case was from Callao to New York, during which there was no opportunity whatever to discharge the libelant, or to supply his

place as steward if he had been disrated. The court expressly recognized the general principle that after service for the stipulated period, and more particularly in the case of service on board a coasting vessel, refusal to pay full wages because of alleged incompetence or negligence should be discouraged. I do not think the inconvenience and expense of supplying the libelant's place at Apalachicola, which is assigned as the reason for permitting the libelant to complete the voyage as he had begun it, are sufficient to take this case out of the general rule. There will be a decree for the libelant, for the amount due him at $45 per month, less what has been paid him on account, and for costs. Rev. St. § 4529, as amended by Act Dec. 21, 1898, c. 28, § 4, 30 Stat. 756 [U. S. Comp. St. 1901, p. 3077], does not apply, as claimed in the libel, to such a case as this. There was a fair question for controversy, and therefore no refusal to pay without sufficient cause, within the meaning of that section. The George W. Wells (D. C.) 118 Fed. 761; The Express (D. C.) 129 Fed. 655.