**MILLER v. LYKES BROS.-RIPLEY S. S. CO., Inc.** *

No. 8778.

Circuit Court of Appeals, Fifth Circuit.
July 16, 1938.

Harry F. Stiles, Jr., of New Orleans, La., for appellant.

Benjamin W. Yancey, Geo. H. Terriberry, Walter Carroll, and Jos. M. Rault, all of New Orleans, La., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a decree rendered in a suit in admiralty for damages and maintenance. Appellant has a chronic ailment which is alleged to have resulted from eating spoiled food while a member of the crew of appellee's ship, the Ethan Allen.

The libel originally alleged that the illness had its inception while appellant was a member of the crew of another ship operated by appellee, but all claim for damages in this behalf was abandoned, and the case was tried on the issues relating to the Ethan Allen. The evidence shows that the

*Writ of certiorari denied 59 S.Ct. 150, 83 L.Ed. ——.

ailment from which appellant is now suffering is polycythemia, a chronic condition of slow, insidious development, in which the red-blood cells increase to exceed the maximum normal count of 5,000,000 per cubic milimeter, and the hemoglobin content of the blood increases to exceed the maximum normal of 85%. In the present state of medical knowledge, the cause of the condition is not known, but its symptoms are materially different from food poisoning, and the medical testimony does not disclose any connection between the two, other than their obvious relationship to metabolism.

It is conceded that some of the meat carried on the voyage became spoiled, and may have been served to the men; but the lower court found that the ingestion of spoiled meat did not produce or in any way contribute to appellant's condition, and that his polycythemia had its inception prior to the beginning of the voyage on the Ethan Allen, as evidenced by a prior examination showing a red-cell count of 5,140,000 with 90% hemoglobin. Since the record does not disclose any evidence which would support a contrary conclusion, we see no reason to disturb this finding. The Vigilant, 9 Cir., 35 F.2d 846; Merchants' & Miners' Transportation Co. v. Nova Scotia S. S. Corp., 1 Cir., 40 F.2d 167; Tomkins Cove Stone Co. v. Bleakley Transportation Co., 3 Cir., 40 F.2d 249; The District of Columbia, 4 Cir., 74 F.2d 977, 103 A.L.R. 768; Escandon v. Pan American Foreign Corp., 5 Cir., 88 F.2d 276.

Appellant contends that, since the burden is on appellee to show that the food served on the voyage was not bad (The Emma F. Angell, D.C., 217 F. 311; The Silver Shell, D.C., 255 F. 340), the burden is equally upon it to show that the spoiled meat, admittedly found among the ship's stores, did not cause the polycvthemia. We do not think this contention is sustained by the authorities. The rule as to the burden of proof in this respect is that the owner or master must show that the ship was properly provisioned. This burden is within the principle that the litigant who has control of the proof must produce it. The Emma F. Angell, D.C., 217 F. 311.

In the case of The Silver Shell, D.C., 255 F. 340, the claim was that certain specified provisions were not supplied, and that the food was not properly cooked and seasoned. The proof showed that such specified provisions as were not supplied were not obtainable in the ports where the vessel touched, but that suitable substitutes were obtained wherever possible, and that every effort was made to obtain a competent cook. The court recognized the rule stated in The Emma F. Angell, supra, but held that the burden had been sustained.

The holding in The Emma F. Angell gives to the statute the effect of imposing upon the owner or master not only the duty of properly provisioning the ship, but also of furnishing the proof of having done so. This is as far as the statute can be extended, even in cooperation with the well-established rule of evidence that the party in possession of the proof must produce it. But neither the statute nor the rule requires the proof of more than that proper provisions were furnished. Thus, appellant, in alleging that bad meat caused his condition, may rely on the statute and rule on the issue of whether or not the meat was bad, but can obtain no assistance therefrom on the issue of causation. As to this issue, the ordinary rules of evidence apply, and the proof to sustain recovery must be more than mere speculation or conjecture. Chicago, M. & St. P. R. Co. v. Coogan, 271 U. S. 472, 46 S.Ct. 564, 70 L.Ed. 1041; Cortes v. Baltimore Insular Line, 2 Cir., 66 F.2d 526. The most that any of appellant's medical witnesses would say was that there was a possibility or strong likelihood that food poisoning could cause polycythemia. Appellant has not sustained the burden on this issue.

The claim for maintenance has no basis in the absence of a showing that the polycythemia began while appellant was in the service of the Ethan Allen, and not at an earlier time as found by the court. The only other issue involved is the claim asserted by appellant after the matter had been heard in the district court, but before its decree had been rendered, that he was entitled to one dollar per day for each day of the voyage on which tainted meat was served. This claim is based upon 46 U.S.C. A. §§ 665, 713. The statutes in question prescribe the rations which a seaman is entitled to receive, and further provide that the seaman shall have the option to accept the fare the master may provide, but, notwithstanding an agreement to do so, he may demand the scale of provisions set out in the act. The record is silent as to any agreement with reference to the rations, and no proof of any demand was made. In

this state of the record, appellant has not brought himself within the provisions of the act, and no recovery can be allowed thereunder.

The decree of the district court is Affirmed.